# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JUANITA PICKETT                                    CIVIL ACTION

VERSUS                                             16-219-SDD-EWD

THE HOSPITAL SERVICE DISTRICT OF
WEST FELICIANA PARISH, LOUISIANA
AND THE BOARD OF COMMISSIONERS
OF THEHOSPITAL SERVICE DISTRICT
OF WEST FELICIANA

## RULING

This matter is before the Court on the *Motion to Dismiss for Failure to State a Claim*[1] filed by Defendants, The Hospital Service District of West Feliciana Parish, Louisiana and the Board of Commissioners of the Hospital Service District of West Feliciana ("Defendants"). Plaintiff, Juanita Pickett ("Plaintiff"), filed an *Opposition*[2] to which Defendants filed a *Reply*,[3] and Plaintiff filed a *Sur-Reply*.[4] For the following reasons, the motion will be granted in part and denied in part.

## I.    FACTUAL BACKGROUND[5]

Plaintiff, an African-American, was hired as a PRN and registered Nurse by the Hospital Service of West Feliciana Parish, Louisiana ("Hospital") on May 4, 2012. Before working for the Hospital, Plaintiff worked as a staff nurse for over 15 years. Plaintiff claims that Caucasian employees, who were allegedly less qualified than her, were given promotions. Plaintiff further alleges that she was repeatedly denied promotional

---

[1] Rec. Doc. 13.
[2] Rec. Doc. 20.
[3] Rec. Doc. 21.
[4] Rec. Doc. 24.
[5] The Court bases the factual background on Rec. Doc. 11.
37718

opportunities and "paid in a disparate fashion" because she is African-American.[6]  Around the time Plaintiff was hired, the Hospital also hired a female Caucasian nurse who was allegedly paid $30 an hour on account of her race, while Plaintiff was only paid $27 an hour with no shift differentials.  Plaintiff further claims that, at the time of her termination, she was still being paid less by the Hospital than a Caucasian nurse at $29 an hour.

Plaintiff also claims that she was subjected to racial harassment consisting of, but not limited to: derogatory statements regarding African-Americans; comments that African-Americans "need to know their place;" placing Plaintiff as the head of housekeeping "because she can relate"[7] as all the employees in housekeeping are African-American; and Caucasian nurses refusing to treat African-American patients. Plaintiff also contends that Defendants did not have a policy regarding harassment, discrimination, and retaliation while she was an employee.

Around December 9, 2013, Plaintiff expressed her interest in the positions of Compliance Officer to the CEO of the Hospital, Lee Chastant ("Chastant").  Chastant assigned one of the open positions to a Caucasian female with a respiratory therapy background and allegedly less education and credentials than Plaintiff, who Plaintiff further claims was unqualified for the position of interim or permanent Compliance Officer. Another nurse was appointed to the positions of Utilization Review/Infection Control and Employee Nurse who allegedly had less experience than Plaintiff.  Plaintiff protested the denial of her appointment to the position arguing the decision was racially motivated.

---

[6] *Id.* at p. 2.
[7] *Id.* at p. 3.
37718

On April 8, 2014, the nursing department had a meeting wherein Chastant stated that five positions would be posted for all interested employees per Hospital policy. Plaintiff emailed Defendants on May 28, 2014 detailing specific instances during her employment with the Hospital that she alleged constituted racism: "failure to post positions in preference of whites, appointment of unqualified whites, and unequal pay to blacks."[8] Chastant allegedly responded to Plaintiff's email denying all of the above allegations.

Plaintiff wrote a letter to Chastant and Neta Leake ("Leake"), Human Resources Manager, on June 4, 2014, alleging that she had not been promoted to positions for which she was qualified, and she was underpaid because she was an African-American female. Leake responded to Plaintiff on June 23, 2014 stating that she was setting up a meeting with Chastant and Kevin Mulligan, a Human Resources Consultant.  On July 7, 2014, Plaintiff meet with Chastant and Mulligan.  Plaintiff alleges that, during this meeting, Chastant admitted that he had not posted the positions and "that he knew he should have."[9] During the meeting, Plaintiff asked for information regarding employee salaries for the purpose of determining if employees were paid differently on the basis of race, information on how interim appointments were made, and she again protested her alleged denial of promotions because she is African-American.

On August 12, 2014, a member of the Board met with Judy Jones ("Jones"), a nurse, and allegedly told Jones that promotions were not given to Plaintiff and others

---

[8] *Id.* at p. 4.
[9] *Id.* at p. 5.
37718

"because of race, and to file a written complaint with the Board, and make sure that press was there for the Board meeting."[10]

Plaintiff and other African-American nurses presented their complaints of racism to the Board on August 21, 2014.  At this meeting, Plaintiff, along with other African-American nurses, provided each member of the Board with emails and correspondence regarding their complaints of racism, "to no avail."[11]  Plaintiff alleges that, on September 17, 2014, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Louisiana Commission on Human Rights ("LCHR").

Plaintiff alleges that, after the board meeting, Plaintiff and her African-American co-workers were "wrongfully accused of committing HIPPA violations, subjected to licensure complaints with their licensing boards, and falsely accused of misconduct by defendants in retaliation/reprisal for Petitioner's protected activities."[12]  Plaintiff alleges that several Health Insurance and Portability Accountability Act ("HIPPA") and Emergency Medical Treatment and Active Labor Act ("EMTALA") violations made by Caucasian employees were reported to Human Resources and Chastant, but no action was taken against the Caucasian employees.

On December 15, 2014, Dr. Anthony Shields, Chief Medical Officer, called Plaintiff and told her she would be suspended without pay for alleged HIPPA violations and that a letter would be emailed from Chastant regarding her suspension.  Dr. Shields also

---

[10] *Id.*
[11] *Id.*
[12] *Id.* at pp. 5-6.
37718

allegedly told Plaintiff not to report to work on December 16, 2014, but "he couldn't explain exactly why [Plaintiff] was being suspended."[13]

A total of five nurses were allegedly suspended for HIPPA violations.  Plaintiff alleges that the Caucasian nurses who were suspended with pay were given the opportunity to resign but allowed to return to work; however, the two African-American nurses were suspended without pay and "were fired and not given any due process, they were never given the chance to meet and discuss the false allegations."[14]  On December 16, 2014, Plaintiff informed an employee of the Hospital that she wanted her attorney present when she was questioned by the Hospital's attorney; this request was denied. On December 26, 2014, Plaintiff again alleged racial discrimination and reported two HIPPA violations that were "summarily dismissed by defendants," and the Defendants did not discipline these Caucasian employees.[15]

Plaintiff alleges that Defendants backdated her letter of termination, with no explanation, on January 9, 2015.  Plaintiff was reported by Defendants to the Board of Nursing regarding the alleged HIPPA violations, placing Plaintiff's nursing license in danger.  The Board of Nursing closed the investigation of the alleged HIPPA violations and found that Plaintiff had no HIPPA violations.

Plaintiff filed this *Complaint*[16] on April 8, 2016 alleging that Defendants violated Title VII of the Civil Rights Act of 1964[17] and Louisiana Revised Statute 23:301, *et seq.*

---

[13] *Id.* at p. 6.
[14] *Id.* at p. 7.
[15] *Id.*
[16] Rec. Doc. 1.
[17] 42 U.S.C. § 2000(e).
37718

On May 26, 2016, Plaintiff filed an *Amended Complaint*[18] to include her Notice of Right to Sue Letter from the Department of Justice.  Defendants have filed a *Motion to Dismiss* Plaintiff's claims.

## II.    LAW AND ANALYSIS

### A.  Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[19]  The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[20]  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[21]  In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[22]  A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[23]  However,

---

[18] Rec. Doc. 11.

[19] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

[20] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

[21] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).

[22] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations omitted) (hereinafter "*Iqbal*").

37718

"[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[24]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[25]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[26]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[27]

### B.  Motion to Dismiss Under Rule 12(b)(1)

"A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)."[28]  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted." "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim relief that is plausible on its face.'"[29] However, when ruling on a Rule 12(b)(1) motion, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments."[30]  Ultimately, a motion to dismiss for lack of subject matter jurisdiction

---

[24] *Twombly*, 550 U.S. at 570.

[25] *Iqbal*, 556 U.S. at 678.

[26] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

[27] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

[28] *Hall v. Louisiana, et. Al.*., 974 F.Supp.2d 978, 985 (M.D. La. Sep. 30, 2013)(citing *Benton v. U.S.*., 960 F.2d 19, 21 (5th Cir. 1998)).

[29] *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[30] *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).

37718

should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim which would entitle plaintiff to relief."[31]

## C. Prescription

Defendants argue that "all of the alleged discrimination Plaintiff asserts in her EEOC Charge occurred [...] outside of the 300-day statutory period..."[32] "When an employee discrimination claim is brought in a deferral state, an aggrieved employee must file a claim with the designated state agency of the EEOC within 300 days of the alleged unlawful employment action."[33] Plaintiff's EEOC "Charge of Discrimination" states that the earliest and latest date of discrimination was December 12, 2013.[34]  If the claim is filed within the 300 days, it is not prescribed.[35]

The Fifth Circuit in *Conner v. Louisiana Department of Health and Hospitals* held:

> This court has recognized that an intake questionnaire that informs the EEOC of the identity of the parties and describes the alleged discriminatory conduct in enough detail to enable the EEOC to issue an official notice of charge to the respondent is sufficient to set [ ] the administrative machinery in motion.[36]

It is undisputed that Plaintiff submitted an intake questionnaire to the EEOC.[37]

---

[31] *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

[32] Rec. Doc. 13-1, p. 5.

[33] *Kirkland v. Big Lots Store, Inc.*, 547 Fed.Appx. 570, 572-73 (5th Cir. 2013).(*See Nat'l R. R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

[34] Rec. Doc. 20-1, p. 25.

[35] *See Kirkland*, 547 Fed.Appx. at 572-73.

[36] 247 Fed. Appx. 480, 481 (5th Cir. 2007)(quoting *Price v. Southwestern Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982); *see also Edelman v. Lynchburg College*, 535 U.S. 106, 118-119, 122 S.Ct. 1145, 152 L.Ed. 188 (2002)(internal citations omitted).

[37] *See* Rec. Docs. 13-1, 20.

37718

The issue before the Court is the date Plaintiff submitted her EEOC intake questionnaire. Plaintiff argues that the intake questionnaire was submitted on September 17, 2014.[38]

The Fifth Circuit in *Kirkland v. Big Lots Store Inc*. examined the question before the Court – what is the date that an EEOC intake questionnaire is deemed submitted for purposes of calculating the 300 day prescriptive period in Louisiana.[39]  The plaintiff in *Kirkland*, like the Plaintiff in the present case,[40] argued that the EEOC intake questionnaire is submitted on the day it was mailed.  In response to this argument, the court stated:

> Mailing is not filing for purposes of Title VII.  A claim is considered filed when it is *received* by the EEOC or the state agency responsible for the administration of complaints of employment discrimination.  Accordingly, Kirkland's claim was not filed until it was received by the LCHR [Louisiana Commission on Human Rights] on May 6, 2010.[41]

Based upon the holding of the Fifth Circuit in *Kirkland*, Plaintiff's EEOC intake questionnaire will be deemed submitted on the date it was received by LCHR.[42]

Examining the EEOC documents provided,[43] it is clear that the EEOC provided a letter dated October 8, 2014 wherein the EEOC "acknowledge[d] receipt of the above-

---

[38] Rec. Doc. 20, p. 1.

[39] 547 Fed.Appx. at 572-73.

[40] Rec. Doc. 20, p. 1.

[41] *Kirkland*, 547 Fed.Appx. at 573.(quoting *Taylor v. Gen. Tel. Co. of Sw*., 759 F.2d 437, 440 (5th Cir. 1985)(29 C.F.R. § 1601.13(a)(4)(2)(a)(A)(2010)).(emphasis original).

[42] The Court rejects Plaintiff's argument that the submission date is September 17, 2014 based upon the Supreme Court's decision in *Edelman v. Lynchburg College*, 535 U.S. 106, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002). *See* Rec. Doc. 17, pp. 4-5.  Applying *Edelman* to the present case, it is clear that the submission date relates back to when the Plaintiff's EEOC intake questionnaire was "filed" with the EEOC.  However, the Fifth Circuit in *Kirkland* clearly stated that an EEOC intake questionnaire is deemed "filed" in Louisiana when it is received by the LCHR.  Accordingly, the Court deems Plaintiff's intake questionnaire "filed" on the date it was received by the LCHR.

[43] *Wilson v. Lockheed Martin Corp*., 03-2276, 2003 WL 22384933, at * 2 (E.D. La. 10/15/03).  "The Court may take judicial notice of EEOC documents as a matter of public record when deciding a Rule 12(b)(6) motion." *See Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).  "Any reference to EEOC documents, 37718

numbered charge of employment discrimination."[44]  As this is the date that the EEOC is acknowledging receipt of Plaintiff's EEOC complaint, the Court finds that the EEOC received the Plaintiff's intake questionnaire on October 8, 2014.  Therefore, as long as the Plaintiff's alleged discriminatory conduct occurred on or after December 12, 2013, her claim is not time barred.  Per her EEOC Charge, Plaintiff's first and last date of discrimination occurred on December 12, 2013.[45]  Accordingly, Plaintiff's Title VII discrimination claim is not time barred as she filed her EEOC complaint within the 300 day prescriptive period required in Louisiana.[46]

For the above reasons, Defendants' *Motion to Dismiss* Plaintiff's Title VII discrimination claim as time barred is DENIED.

### D.  Scope of Plaintiff's EEOC Charge

Defendants next argue that Plaintiff's retaliation and harassment claims should be dismissed because "she failed to exhaust all of her administrative remedies and did not include these claims in the scope of her EEOC Charge."[47]  In the EEOC Charge of Discrimination ("Charge") provided by Plaintiff, the box for retaliation is empty.[48]  In the Charge, the Plaintiff has clearly marked "discrimination based on: race, color, and sex."[49]  Plaintiff argues she checked the box marked continuing action on her Charge, and her retaliation and harassment claims stem from the discrimination alleged in the Charge.[50]

---

therefore, does not convert the 12(b)(6) motion into a motion for summary judgment."  *See Chadwick v. Layrisson*, 98-3518, 1999 WL 717628, *2 (E.D. La. 9/13/99).

[44] Rec. Doc. 20-1, p. 17.

[45] *See* Rec. Doc. 20-1, p. 25.

[46] The Court need not examine Plaintiff's continuing violation or Lilly Ledbetter arguments as her discrimination claim is not time barred.

[47] Rec. Doc. 13-1, p. 9.

[48] *See* Rec. Doc. 20-1, p. 25.

[49] *Id.*

[50] *See* Rec. Doc. 24, *See* Rec. Doc. 20-1, p. 25.

37718

In her *Sur-Reply*, Plaintiff contends "it can reasonably be expected that the Plaintiff's claim of harassment and retaliation would grow out of her Charge."[51]  Plaintiff relies on *Walls v. Mississippi State Department of Public Welfare* and *Pacheco v. Mineta* in support of this argument.[52]

Turning first to the question of retaliation, the Court will apply the standard articulated by the Fifth Circuit in *Simmons-Myers v. Caesars Entertainment Corporation*.[53]  The Court in *Simmons-Myers* applied the *Gupta* exception, "which does not require exhaustion for a retaliation claim growing out of an earlier EEOC charge."[54]  Plaintiff argues that Defendants' retaliatory conduct grew out of her discrimination charge filed with the EEOC.[55]  Ordinarily, Plaintiff would be required to "file a supplemental claim, or at the very least, amend her original EEOC charge"[56] for her retaliation claim to be properly before the Court.  If, however, the alleged retaliatory conduct is not "the same inciting event,"[57] but retaliation growing out of an earlier charge, the Court retains ancillary jurisdiction over the retaliation charge.[58]  Here Plaintiff filed her Charge of discrimination on October 8, 2014,[59] and was subsequently allegedly retaliated against, leading to her termination on January 9, 2015.[60]  Because the timeline illustrates that the alleged retaliatory conduct grew out of her EEOC charge, the Court will apply the *Gupta* exception to Plaintiff's retaliation claim and maintain ancillary jurisdiction over Plaintiff's retaliation

---

[51] Rec. Doc. 24, p. 3.
[52] *Id.*, p. 3, *citing Walls*, 730 F.2d 306, 318 (5th Cir. 1984); *Pacheco*, 448 F.3d 783, 792 (5th Cir. 2006).
[53] 515 Fed.Appx. 269 (5th Cir. 2013).
[54] *Id.* at 272 (quoting *Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir. 1981)).
[55] Rec. Doc. 24, p. 3.
[56] *Simmons-Myers*, 515 Fed.Appx. at 273.
[57] *Id.* at 274.
[58] *See Gupta*, 654 F.2d at 414.
[59] Rec. Doc. 20-1, p. 17.
[60] Rec. Doc. 11, p. 7.
37718

claim.  Accordingly, Defendants' *Motion to Dismiss* Plaintiff's retaliation claim pursuant to FRCP 12(b)(1) is DENIED.

Lastly, Defendants move for dismissal for Plaintiff's failure to exhaust her administrative remedies on her harassment claim.  While Plaintiff's *Complaint* contains allegations of retaliation, harassment, and discrimination,[61] the charge contains only a claim of discrimination.[62]   The court in *Pacheco*, relying on *Fellows v. Universal Restaurants, Inc.* and *Fine v. GAF Chemical Corporation*, stated: "this court interprets what is properly embraced in review of a Title–VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."[63] Accordingly, the Court may "look slightly beyond [the charge's] four corners, to its substance rather than its label."[64]

The language contained in the "Particulars" portion of Plaintiff's charge clearly alleges that she suffered discrimination in the denial of promotional opportunities and being paid at a lower rate.  Absent, however, in the "Particulars" portion is any alleged harassment.  To allow Plaintiff's harassment claims to proceed "despite its loose fit with the administrative charge and investigation … is precluded if it would circumvent … agency efforts to secure voluntary compliance before a civil action is instituted."[65] Because the facts supporting Plaintiff's claim for harassment in her *Complaint* are

---

[61] *Id.*
[62] Rec. Doc. 20-1, p. 25.
[63] 448 F.3d at 789.
[64] *Id.*
[65] *Id.*(quoting *Ong v. Cleland*, 642 F.2d 316, 319 (9th Cir. 1981)).
37718

separate incidents from the incidents of discrimination contained in her Charge,[66] the Court finds it plausible that Plaintiff's harassment claims "[grew] out of the charge of discrimination."[67] Accordingly, Defendants' *Motion to Dismiss* Plaintiff's harassment claim pursuant to FRCP 12(b)(1) is DENIED.

### E.  Plaintiff's State Law Claim

Defendants argue that Plaintiff's Louisiana state law discrimination claim has prescribed,[68] along with her claims for harassment and retaliation because they were never properly alleged.[69]  Louisiana Revised Statute 23:303(C) states:

> A plaintiff who believes he or she has been discriminated against, and who intends to pursue court action shall give the person who has allegedly discriminated written notice of this fact at least thirty days before initiating court action, shall detail the alleged discrimination, and both parties shall make a good faith effort to resolved the dispute prior to initiating court action.[70]

Federal district courts in Louisiana "have held [that] the filing of an EEOC charge of discrimination satisfies the notice requirement [La. R.S. 23:303(c)], but limits the state claim to the alleged discrimination detailed in the EEOC charge…"[71]  As previously discussed, Plaintiff's EEOC discrimination charge was timely filed and is not time barred. Defendants further argue that Plaintiff's state law claims for harassment and retaliation should be dismissed as they were not contained in the EEOC Charge which satisfies the notice requirement under La. R.S. 23:303(c).  For the reasons discussed above, the Court

---

[66] *See* Rec Docs. 11, 20-1, p. 25.
[67] *Pacheco*, 448 F.3d at 789.
[68] Rec. Doc. 13-1, p. 12.
[69] Rec. Doc. 21, p. 3.
[70] La. R.S. 23:303(C).
[71] *Johnson v. Hospital Corp. of America*, 767 F.Supp.2d 678, 700 (W.D. La. Feb. 11, 2011).(*See e.g., Johnson v. Harrah's Entertainment, Inc.*, 2005 WL 3541139, *4 (E.D. La. 2005); *Dorgan v. Foster*, 2006 WL 2067716, *5, (E.D. La. 2006), citing *Dunn v. Nextel So. Corp.,* 207 F.Supp.2d 523, 524 (M.D. La. 2002). 37718

finds that Plaintiff's *Complaint* is limited solely to her discrimination claims.  Because Plaintiff's Louisiana law claims are based upon her EEOC Charge, Defendants could not have been given notice relating to her harassment and retaliation as is required under La. R.S. 303(c), because these claims were not contained in her EEOC complaint.

Plaintiff contends she provided notice to Defendants regarding the retaliation and harassment claims because she "attempted and participated in conciliation with Plaintiff at the EEOC, in order to resolve all of her claims."[72]  As discussed above *in extensio*, the only claim made by Plaintiff in her EEOC Charge was a discrimination claim.  While the *Gupta* exception applies to save Plaintiff's Title VII retaliation claim from dismissal, to maintain a valid retaliation claim under Louisiana law, however, Plaintiff must have provided Defendants with "separate written notice"[73] of her retaliation claim before she instituted this suit.

The United States District Court for the Western District in Louisiana in *Lombardino v. Brentwood Health Management L.L.C.* held:

> [the Louisiana Employment Discrimination statute [La. R.S. 23:301 *et seq.*]] does not expressly provide for a penalty in the event of noncompliance with its procedural provisions. Nonetheless, other courts addressing this issue have determined that a claim under the LEDL must be dismissed if the plaintiff fails to satisfy the notice requirements, unless she has filed a charge with the EEOC within the requisite time period.[74]

---

[72] Rec. Doc. 24, p. 4.

[73] *Mayes v. Office Depot, Inc.*, 292 F.Supp.2d 878, 889 (W.D. La. Sep. 19, 2003).

[74] *Lombardino v. Brentwood Health Management L.L.C*, 15-cv-1358, 2005 WL 2600439 at *2 (W.D. La. Oct. 13, 2005)(*See Dunn v. Nextel South Corp.*, 207 F.Supp. 2d 523, 524 (M.D. La. 2002); *see also Trahan v. Lowe's Inc.*, 2002 WL 1560272 at *5 (E.D. La. 2002)).

37718

Because the Plaintiff's EEOC charge only contained a claim of discrimination and not harassment or retaliation, her EEOC Charge could not provide notice to Defendants of Plaintiff's state law retaliation and harassment claims.  Like the plaintiff in *Lombardino*, Plaintiff herein "has failed to provide any additional information which would demonstrate that she gave written notice to [Defendants] or that she made a good faith effort to resolve the issues [her harassment and retaliation claims] before initiating suit."[75]  With the absence of information that Plaintiff provided notice of her retaliation and harassment claims before filing this suit, the Court finds that Plaintiff has failed to satisfy the requirements of La. R.S. 23:303(C).  Plaintiff's Louisiana state law harassment and retaliation claims are procedurally time barred and dismissed without prejudice,[76] but her Louisiana state law discrimination claim is not time barred.

Accordingly, Defendants' *Motion to Dismiss* Plaintiff's state law discrimination claim is DENIED and Defendants' *Motion to Dismiss* Plaintiff's state law harassment and retaliation claims is GRANTED.

### F.  Plaintiff's Claim Against the Board of Commissioners

Defendants argues Plaintiff's claims against the Board of Commissioners ("Board") should be dismissed because "nowhere in the *Complaint* does Plaintiff set forth any factual allegations that they engaged in any wrongful or unlawful conduct."[77]  The *Complaint* alleges the "[Board] had 'absolute control and authority over' the West Feliciana Parish Hospital."[78]  Viewing Plaintiff's allegations in the light most favorable to

---

[75] *Id.* at *3.
[76] The Court need not address Plaintiff's arguments regarding La. R.S. 23:303(D) as Plaintiff is still required to provide notice in accordance with La. R.S. 23:303(C) to avail herself of La. R.S. 23:303(D).
[77] Rec. Doc. 13-1, p. 14.
[78] Rec. Doc. 11, p. 1.
37718

her, Plaintiff's allegations against the Hospital "can also be construed as allegations against the [Board]."[79]

Thus, the motion to dismiss is DENIED as to the Board.

## III.   CONCLUSION

For the foregoing reasons, Defendant's *Motion to Dismiss for Failure to State a Claim*[80] is GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on March 22, 2017.


**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[79] *Williams v. Hospital Service Dist. of West Feliciana Parish, La.*, 15-cv-00095, 2015 WL 4656910 at *5 (M.D. La. Aug. 5, 2015).
[80] Rec. Doc. 13.
37718