# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JUANITA PICKETT                                                    CIVIL ACTION

VERSUS                                                             16-219-SDD-RLB

THE HOSPITAL SERVICE DISTRICT OF
WEST FELICIANA PARISH, LOUISIANA
AND THE BOARD OF COMMISSIONERS
OF THE HOSPITAL SERVICE DISTRICT
OF WEST FELICIANA

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by

Defendants, The Hospital Service District of West Feliciana Parish Louisiana and the

Board of Commissioners of the Hospital Service District of West Feliciana ("Defendants").

Plaintiff, Juanita Pickett ("Plaintiff" or "Pickett"), filed an *Opposition*[2] to which Defendants

filed a *Reply,*[3] and Plaintiff filed a *Sur-Reply.*[4] Defendants also filed a *Sur-Reply.*[5] For the

following reasons, the motion will be granted in part and denied in part.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[6]

Plaintiff, an African-American female, was hired as a PRN and Registered Nurse

by the Hospital Service of West Feliciana Parish, Louisiana ("Hospital") on May 4, 2012.

Before working for the Hospital, Plaintiff worked as a staff nurse for over 15 years. Plaintiff

claims that white employees, who were allegedly less qualified than her, were given

promotions.    Plaintiff further alleges that she was repeatedly denied promotional

---

[1] Rec. Doc. 37.
[2] Rec. Doc. 42.
[3] Rec. Doc. 48.
[4] Rec. Doc. 51.
[5] Rec. Doc. 54.
[6] The Court bases the factual background on Rec. Doc. 1.
46260

opportunities and "paid in a disparate fashion" because she is African-American.[7]  Around the time Plaintiff was hired, the Hospital also hired a white female nurse who was allegedly paid $30 an hour on account of her race, while Plaintiff was only paid $27 an hour with no shift differentials.  Plaintiff further claims that, at the time of her termination, she was still being paid less by the Hospital than a white nurse at $29 an hour.

Plaintiff also claims that she was subjected to racial harassment consisting of, but not limited to: derogatory statements regarding African-Americans; comments that African-Americans "needed to know their place;" placing Plaintiff as the head of housekeeping "because she can [] relate"[8] as all the employees in housekeeping are African-American; and white nurses refusing to treat African-American patients.  Plaintiff also contends that Defendants did not have a policy regarding harassment, discrimination, and retaliation while she was an employee.

Around December 9, 2013, Plaintiff expressed her interest in the positions of Compliance Officer to the CEO of the Hospital, Lee Chastant ("Chastant").  Chastant assigned one of the open positions to a white female with a respiratory therapy background and allegedly less education and credentials than Plaintiff, who Plaintiff further claims was unqualified for the position of interim or permanent Compliance Officer. Another nurse was appointed to the positions of Utilization Review/Infection Control and Employee Nurse who allegedly had less experience than Plaintiff.  Plaintiff protested the denial of her appointment to the position arguing the decision was racially motivated.

_____

[7] *Id.* at p. 2.
[8] *Id.* at p. 3.
46260

On April 8, 2014, the nursing department had a meeting wherein Chastant stated that five positions would be posted for all interested employees per Hospital policy. Plaintiff emailed Defendants on May 28, 2014 detailing specific instances during her employment with the Hospital that she alleged constituted racism: "failure to post positions in preference of whites, appointment of unqualified whites, and unequal pay to blacks."[9] Chastant allegedly responded to Plaintiff's email denying all of the above allegations.

Plaintiff wrote a letter to Chastant and Neta Leake ("Leake"), Human Resources Manager, on June 4, 2014, alleging that she had not been promoted to positions for which she was qualified, and she was underpaid because she was an African-American female. Leake responded to Plaintiff on June 23, 2014 stating that she was setting up a meeting with Chastant and Kevin Mulligan, a Human Resources Consultant. On July 7, 2014, Plaintiff meet with Chastant and Mulligan. Plaintiff alleges that, during this meeting, Chastant admitted that he had not posted the positions and "that he knew he should have."[10] During the meeting, Plaintiff asked for information regarding employee salaries for the purpose of determining if employees were paid differently on the basis of race, information on how interim appointments were made, and she again protested her alleged denial of promotions because she is African-American.

On August 12, 2014, a member of the Board met with Judy Jones ("Jones"), a nurse, and allegedly told Jones that promotions were not given to Plaintiff and others

---

[9] *Id.* at p. 4.
[10] *Id.* at p. 5.

46260

"because of race, and to file a written complaint with the Board, and make sure that press was there for the Board meeting."[11]

Plaintiff and other African-American nurses presented their complaints of racism to the Board on August 21, 2014. At this meeting, Plaintiff, along with other African-American nurses, provided each member of the Board with emails and correspondence regarding their complaints of racism, "to no avail."[12] On September 17, 2014, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Louisiana Commission on Human Rights ("LCHR").

Plaintiff alleges that, after the board meeting, Plaintiff and her African-American co-workers were "wrongfully accused of committing HIPAA violations, subjected to licensure complaints with their licensing boards, and falsely accused of misconduct by defendants in retaliation/reprisal for Petitioner's protected activities."[13] Plaintiff alleges that several Health Insurance and Portability Accountability Act ("HIPAA") and Emergency Medical Treatment and Active Labor Act ("EMTALA") violations made by white employees were reported to Human Resources and Chastant, but no action was taken against the white employees.

On December 15, 2014, Dr. Anthony Shields, Chief Medical Officer, called Plaintiff and told her she would be suspended without pay for alleged HIPAA violations and that a letter would be emailed from Chastant regarding her suspension. Dr. Shields also

---

[11] *Id.*
[12] *Id.*
[13] *Id.* at pp. 5-6.
46260

allegedly told Plaintiff not to report to work on December 16, 2014, but "he couldn't explain exactly why [Plaintiff] was being suspended."[14]

A total of five nurses were allegedly suspended for HIPAA violations. Plaintiff alleges that the white nurses who were suspended with pay were given the opportunity to resign but allowed to return to work; however, the two African-American nurses were suspended without pay and "were fired and not given any due process, they were never given the chance to meet and discuss the false allegations."[15] On December 16, 2014, Plaintiff informed an employee of the Hospital that she wanted her attorney present when she was questioned by the Hospital's attorney; this request was denied. On December 26, 2014, Plaintiff again alleged racial discrimination and reported two HIPAA violations that were "summarily dismissed by defendants," and the Defendants did not discipline these Caucasian employees.[16]

Plaintiff alleges that Defendants backdated her letter of termination, with no explanation, on January 9, 2015. Plaintiff was reported by Defendants to the Board of Nursing regarding the alleged HIPAA violations, placing Plaintiff's nursing license in danger. The Board of Nursing closed the investigation of the alleged HIPAA violations and found that Plaintiff had not committed HIPAA violations.

On March 22, 2017, this Court issued a *Ruling*[17] granting in part and denying in part the Defendants' *Motion to Dismiss*[18] for failure to state a claim. In this *Ruling*, the

---

[14] *Id.* at p. 6.
[15] *Id.* at p. 7.
[16] *Id.*
[17] Rec. Doc. 26.
[18] Rec. Doc. 13.

46260

Court dismissed Plaintiff's state law harassment and retaliation claims.[19]  The Defendants now move for summary judgment on Plaintiff's Title VII and state law discrimination claims for failure to promote, disparate pay, discriminatory discipline, hostile work environment, and retaliation.

## II.    LAW AND ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[21]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[22]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[23]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[24]

---

[19] Rec. Doc. 26, p. 15.
[20] Fed. R. Civ. P. 56(a).
[21] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[22] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[23] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[24] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
46260

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[25] All reasonable factual inferences are drawn in favor of the nonmoving party.[26] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[27] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[28]

## B. Title VII Race Discrimination

### 1. Failure to Promote Burden of Proof

In order to survive Defendants' motion for summary judgment on her failure to promote claims, Pickett must establish a *prima facie* case of discrimination by providing summary judgment evidence that she: "(1) is a member of a protected class; (2) that [s]he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite [her] qualifications, [she] was rejected; and (4) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications."[29] If Plaintiff meets her *prima facie* burden, the Defendants must "produce a legitimate, nondiscriminatory reason for the failure or refusal to [promote] the

---

[25] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[26] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[27] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[28] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[29] *Sharkey v. Dixie Elec. Membership Corp.*, 262 F.App'x. 598, 602 (5th Cir. 2008).
46260

plaintiff."[30]  If the Defendants proffer a legitimate, nondiscriminatory reason for the failure or refusal to hire Plaintiff, Plaintiff then "bears the ultimate burden of proving that the defendant's proffered legitimate nondiscriminatory reason is pretext for discrimination.  To carry this burden, the plaintiff must rebut each nondiscriminatory reason articulated by the defendant."[31]  Pickett alleges that the Defendants failed to promote her to the positions of compliance officer, utilization review, infection control coordinator, and employee health nurse because she is an African-American.[32]

### a. Compliance Officer Position

In December 2013, Perkins, a white female, was named as the Director of Compliance for the Hospital.[33]  Perkins became the Director of Compliance when Mary Morse ("Morse") ended her employment at the Hospital.[34]  Plaintiff maintains that the appointment of Perkins to the compliance officer position was discriminatory.

The Defendants move for summary judgment on the second prong, arguing namely that there is no summary judgment evidence that Plaintiff applied for the positions in question, or even "voiced her interest" in the compliance officer position.[35]  The Plaintiff maintains that she "orally applied for the position[] of Compliance Officer."[36]  Plaintiff's cited deposition testimony does not support her assertion that she "orally applied for the position[] of compliance officer."[37]  In an email sent to Chastant on May 28, 2014, Plaintiff stated she was "very interested [in the compliance officer position] as well as [*sic*] others

---

[30] *Id.*
[31] *Id.*
[32] Rec. Doc. 45, p. 18.
[33] Rec. Doc. 37-5, p. 7, ll. 22-25, p. 8, l.1.
[34] Rec. Doc. 37-4, p. 8, ll. 21-24.
[35] Rec. Doc. 37-1, p. 13.
[36] Rec. Doc. 45, p. 18.
[37] *Id.*
46260

positions and [*sic*] meet all the qualifications, yet was denied the opportunity to apply [].”[38]

While there is summary judgment evidence that Pickett expressed interest in the compliance officer position, there is no summary judgment evidence that Pickett applied for the position or that she expressed her intent to apply for the position. Accordingly, the Court finds that Plaintiff has failed to demonstrate with summary judgment evidence that she applied for the position of compliance officer, and thus fails to establish this *prima facie* requirement for a Title VII failure to promote claim.[39]

Plaintiff argues in the alternative that it would have been “futile” for her to apply for the compliance officer position.[40]  Pickett relies on the United States Supreme Court’s decision in *International Brotherhood of Teamsters v. United States*[41] for her assertion that a “plaintiff’s failure to apply for the position does not bar her claim if she can show that such an application would have been a futile gesture.”[42]  Under controlling Fifth Circuit jurisprudence, Pickett must show “that the application for the promotion was deterred by a known and consistently enforced policy of discrimination.”[43]  Plaintiff provides no evidence of a consistently enforced policy of discrimination; her allegation that she was not promoted to the position of compliance supervisor because “her race

---

[38] Rec. Doc. 42-2, p. 85.
[39] Plaintiff bases her argument for failure to promote upon a four part test outlined by the Supreme Court in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Given that the Fifth Circuit applies an updated four part test for failure to promote following the Supreme Court’s 1981 decision in *Texas Dept. of Community Affairs*, and Plaintiff provides no argument why the Fifth Circuit’s four part test should not apply in this case, the Court will apply the four part failure to promote test articulated by the Fifth Circuit in *Sharkey v. Dixie Elec. Membership Corp.*, 262 F.App’x. 598, 602 (5th Cir. 2008), and most recently in *Jenkins v. Louisiana Workforce Commission*, 713 F.App’x. 242, 244-45 (5th Cir. 2017).
[40] Rec. Doc. 45, pp. 18-19.
[41] 431 U.S. 324, 363-66 (1977).
[42] Rec. Doc. 45, pp. 18-19.
[43] *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999).
46260

was black"[44] is merely conclusory and unsupported by evidence of an application.

Plaintiff argues that these three alleged statements by Chastant demonstrate that it would have been futile for her to apply for the position: "1) confirm[ed] whites as opposed to black applicants were getting promotions because it was in keeping with the landscape; 2) confirm[ed] he was 'replacing white people with white people,' 3) command[ed] Haley to stay in her place."[45]   In a letter that was purportedly sent from Chastant to Pickett, Chastant stated: "During the last year or so, we have had management departures (all white females – I point that out solely because your communications and that of others focus upon race, and less importantly, sex discrimination allegations) **which have changed the staffing landscape quite significantly**."[46]

Plaintiff interprets Chastant's words that management departures have "changed the staffing landscape" as an expression that white applicants would be promoted in preference to black applicants.[47]   Plaintiff stated in her deposition that she never heard Chastant state that promotions were made "in keeping with the landscape."[48] The plain language of Chastant's letter to Pickett, which is Plaintiff's sole support regarding this comment, does not provide competent summary judgment evidence that Chastant communicated that hiring decisions were being made the goal of replacing white employees with white employees.

Pickett also alleges that Chastant told Carolyn Haley, an African-American nurse,

---

[44] Rec. Doc. 45, p. 20.
[45] *Id.* at p. 47.
[46] Rec. Doc. 37-3, pp. 123-124 (emphasis added).
[47] *See* Rec. Doc. 45, p. 27.
[48] Rec. Doc. 37-3, p. 89, ll. 5-10.

46260

to stay in her place;[49] however, Pickett admitted in her deposition she never heard Chastant tell any African-American employee that they needed to stay in their place.[50] An unsupported belief that this stamen was made is not competent summary judgment evidence that the act occurred. There is simply no competent summary judgment evidence that Chastant told her or any African-American employee to "stay in her place." Accordingly, the Court finds that Plaintiff's claim that her application for the compliance officer position was futile fails because she has not provided summary judgment evidence that "the application for the promotion was deterred by a known and consistently enforced policy of discrimination."[51] Accordingly, the Defendants' motion for summary judgment on Plaintiff's failure to promote claim for the compliance officer position is GRANTED

### b. *Infection Control Coordinator and Employee Health Nurse Positions*

Plaintiff also argues that the Defendants failed to promote her to the infection control coordinator and employee health nurse positions because she was an African-American.[52] The infection control coordinator position and the employee health nurse position became available in December 2013, when Mary Morse, a registered nurse, resigned.[53] Like her application for the compliance officer position, the record evidence does not support Pickett's contention that she orally applied for the position, or that she submitted a formal application.[54] Plaintiff relies on the same deposition evidence to support her argument that she applied for the employee health nurse and infection control

---

[49] Rec. Doc. 45 at p. 17.
[50] Rec. Doc. 37-3, p. 89, ll. 11-21.
[51] *Shackelford*, 190 F.3d at 406.
[52] Rec. Doc. 45, p. 18.
[53] Rec. Doc. 37-4, p. 8, ll. 20-24.
[54] *See supra* nn. 36-39.
46260

coordinator position as she did above for the compliance officer position. Accordingly, the Court finds, for the above stated reasons, that Plaintiff has failed to provide summary judgment evidence that she orally applied for the compliance officer and employee health nurse position.

Again Plaintiff argues alternatively that her submission of the applications for the compliance officer and employee health nurse position would have been futile. Once again Pickett relies on the same record evidence and jurisprudence to support her futility argument for the compliance officer and employee health nurse position and the compliance officer application.[55] For the above stated reasons, the Court finds that Pickett has not demonstrated applying the compliance officer and employee health nurse positions was futile given that she has provided no summary judgment evidence that "the application[s] for the promotion[s] w[ere] deterred by a known and consistently enforced policy of discrimination."[56] Accordingly, the Defendants' motion for summary judgment on Plaintiff's failure to promote claims for the compliance officer, infection control coordinator, and employee health nurse positions is GRANTED.

### c. Utilization Review Position

Pickett also contends the Defendants failed to promote her to the position of utilization review because she is an African-American.[57] The utilization review position became available in December 2013 when Morse resigned.[58] Christy Stone, a white female, was named to the utilization review position, but later resigned.[59] Pickett testified

---

[55] *See supra* nn. 26-43.
[56] *Shackelford*, 190 F.3d at 406.
[57] Rec. Doc. 43-2, p. 16.
[58] Rec. Doc. 37-4, p. 8, ll. 23-24, p. 43-2, p. 16.
[59] Rec. Doc. 37-4, pp. 20, ll. 2-6, 13, ll. 7-17.
46260

that she applied for the utilization review position.[60]  Angel Noble ("Noble"), a white female, was ultimately appointed to the utilization review position 2014.[61]  The Defendants do not challenge Plaintiff's *prima facie* case with respect to this position; rather, they aver that they have articulated legitimate, nondiscriminatory reasons for selecting Noble to fill the utilization review position.[62]  Under *McDonnell Douglas* burden shifting, the Defendants have the obligation to "produce a legitimate, nondiscriminatory reason for the failure or refusal to hire the plaintiff."[63]  The Defendants' stated that Noble was selected as the best candidate because she had shown "great interest in the position," was ranked "the next best candidate in June 2014 when Ms. Stone was selected for the position," and Noble "had shown a good familiarity with the discharge plan at the hospital."[64]

The Plaintiff maintains that Chastant "could not testify as to a specific reason why Noble was hired over Pickett."[65]  The Fifth Circuit in *Manning v. Chevron Chemical Co., LLC.*[66] examined whether an employer must state the specific reasons why a protected employee was not granted a promotion in order to satisfy the *McDonnell Douglas* burden shifting standard.  The plaintiff in *Manning*, like Pickett, argued that "[the defendant] was required to explicitly state that it chose [the successful candidate] because they were more qualified than [plaintiff]."[67]  The *Manning* court disagreed with the plaintiff's argument and stated: "[defendant's] statement that it chose the 'best qualified' candidates clearly implies that it selected [the successful candidates] because they were better qualified

---

[60] Rec. Doc. 37-3, p. 97, ll. 21-24.
[61] Rec. Doc. 37-4, pp. 20, ll. 2-6, 13, ll. 7-17.
[62] Rec. Doc. 37-1, pp. 14-15.
[63] *Id.* at p. 15.
[64] *Id.*
[65] Rec. Doc. 45, p. 22.
[66] 332 F.3d 874, 881 (5th Cir. 2003).
[67] *Id.*

46260

than [plaintiff]."[68]  Because the Defendants in the case at bar have proffered the identical legitimate, nondiscriminatory reason for failing to promote Pickett as offered by the defendant in *Manning*, the Court finds that Defendants have articulated a legitimate, nondiscriminatory reason for not promoting Pickett to the utilization review position. Under *McDonnell Douglas* burden shifting, Pickett now "bears the ultimate burden of proving that the defendant's proffered legitimate nondiscriminatory reason is pretext for discrimination.  To carry this burden, the plaintiff must adduce summary judgment evidence that rebuts each nondiscriminatory reason articulated by the defendant."[69]

Plaintiff argues that the Hospitals proffered defense that Stone was the best qualified candidate for the position is pretext for discrimination because that she was more qualified for the utilization review position that Noble.[70]  Pickett's contention that she is more qualified is based on her fifteen years of experience – which Noble herself acknowledged in her deposition.[71]  According to Plaintiff, relying on the Fifth Circuit's decision in *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*,[72] "an employers' alleged reasons are pretextual when defendant's employee admitted the plaintiff had more experience than his replacement[.]"[73]

In *Burrell*, Dr. Pepper, the defendant, hired a white male over an African-American male because the white male had more "purchasing experience in the bottling industry"[74] which allegedly made the white candidate "better" for the position.  The Fifth Circuit in

---

[68] *Id.*
[69] *Id.*
[70] Rec. Doc. 45, p. 22.
[71] Rec. Doc. 42-5, pp. 78-79.
[72] 482 F.3d 408, 411-16 (5th Cir. 2007).
[73] Rec. Doc. 45, pp. 19-20.
[74] *Burrell*, 482 F.3d at 412.

46260

*Burrell*, stated that the plaintiff had:

> two methods available to him to try to prove that Dr. Pepper's proffered reason for failing to promote him was a pretext for racial discrimination: (1) Burrell could show that Dr. Pepper's proffered explanation is false or 'unworthy of credence;' or (2) Burrell could try to prove that he is 'clearly better qualified' than the person selected for the position.'[75]

The plaintiff in *Burrell* presented the following deposition testimony of his employer referencing the plaintiff's:

> [] strong background in purchasing and [the white male's] relatively weak background, along with his exemplary performance of the Vice President of Purchasing duties during [white male employee's] initial months of employment, supports the conclusion that Dr. Pepper did not seek someone with more 'purchasing experience in the bottling industry.'[76]

Dr. Pepper countered by stating that the African-American male's purchasing experience during the initial months of the white male's employment was merely "functionary."[77] Dr. Pepper also argued that the white employee's thirteen years of experience and his two years of management were valuable experience for the position to which he was ultimately appointed.[78] After examining the record, the *Burrell* court found that the plaintiff had presented summary judgment evidence that Dr. Pepper's proffered nondiscriminatory reason for failure to promote was pretext.[79] The *Burrell* court focused on the white employee's deposition testimony that his experience "did not necessarily qualify him"[80] to handle his position at Dr. Pepper, and the deposition of the Dr. Pepper

---

[75] *Id.*
[76] *Id.* at 412-13.
[77] *Id.* at 413.
[78] *Id.*
[79] *Id.*
[80] *Id.*
46260

supervisor who admitted that plaintiff "had more relevant [] experience"[81] than the white male who was promoted.

In the present case, Noble stated that Pickett was more qualified for the utilization review positon "because she had more years of experience."[82] Chastant stated that Noble was selected because she filed an application for the position when it originally became available in June 2014.[83] Chastant also stated that Noble was selected because she had served as a "backup" to the previous employee who held the utilization review position.[84] Plaintiff argues that Stone's original appointment to the utilization review position in June 2014 was against hospital policy because the position was not posted.[85] Chastant admitted in his deposition that Noble's appointment to the position in June 2014, which Plaintiff maintains was against Hospital policy, posted, gave her "experience with the position" which "was a plus."[86]

Because the alleged experience which gave Noble an advantage in the application process for this position was the result of an admitted violation of hospital policy, and Noble's testimony that Pickett had more experience, the Court finds that Plaintiff has presented summary judgment evidence demonstrating a material issue of fact as to whether the Defendants' alleged reasons for promoting Noble are pretext for racial discrimination. Accordingly, the Defendants' motion for summary judgment on Plaintiff's failure to promote to the utilization review position is DENIED.

---

[81] *Id.* at 414.
[82] Rec. Doc. 42-5, p. 78, ll. 15-25, p. 79, ll. 1-2.
[83] *Id.* at p. 38, ll. 7-10.
[84] *Id.* at p. 37, ll. 7-10.
[85] Rec. Doc. 45, p. 5.
[86] Rec. Doc. 37-4, p. 23, ll. 17-19.
46260

2.  Disparate Pay

To establish her *prima facie* case for disparate pay, Plaintiff must establish that: "[(1)] [s]he is a member of a protected class, and [(2)] that [s]he is paid less than a nonmember for work requiring substantially the same responsibility."[87]  It is undisputed that Pickett is a member of a protected class.  Plaintiff argues that she was paid less than two white registered nurses, Shannon White ("White"), Joseph Williams ("Williams"), and Melanie Bickham ("Bickham").[88]

Pickett argues that she was initially hired in 2012 as a PRN at an initial rate of pay of $27.00 per hour.[89]  Pickett maintains that Bickham was hired six months before she began working at the Hospital as a PRN, but Bickham was paid a rate of $30.00 per hour.[90]  Plaintiff cites no record evidence, other than her own testimony and hearsay evidence that Bickham was paid a rate of $30.000 per hour.[91]  Given that Plaintiff has not provided competent summary judgment evidence of Bickham's initial rate of pay, Pickett has failed to demonstrate that Bickham, one of her alleged comparators, was paid at a higher rate of pay.

According to Pickett, a white RN, was paid more than Plaintiff.  Pickett alleges that White was hired at a rate of $25.00 an hour seven years prior to Pickett's start date at the Hospital, and by the time Plaintiff was hired, White was paid at a rate of $32.02.[92]  Once again, Plaintiff fails to cite record evidence to support this claim.  Plaintiff also provides

---

[87] *Taylor v. United Parcel Service, Inc.*, 554 F.3d 510, 522 (5th Cir. 2008).
[88] Rec. Doc. 45, p. 23.
[89] Rec. Doc. 42-3, p. 34.
[90] Rec. Doc. 45, p. 23.
[91] *See* Rec. Doc. 45, p. 23.
[92] Rec. Doc. 45, p .2.
46260

no summary judgment evidence, other than her own assertion, that Ritchie was paid $2.02 per hour more than herself.  Accordingly, the Court finds that the Plaintiff has not met her *prima facie* burden for a disparate pay claim, and the Defendants' motion for summary judgment on Pickett's disparate pay claim is GRANTED.

      3.  Hostile Work Environment

Plaintiff alleges that she was subjected to harassment under Title VII because the Defendants created a hostile work environment during her employment.  According to Fifth Circuit jurisprudence, the Plaintiff must offer summary judgment evidence of the following five elements to meet her *prima facie* burden for a hostile work environment claim:

> (1) The employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term condition or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[93]

The Fifth Circuit in *Ramsey v. Henderson*[94] stated:  "For a harassment on the basis of race to affect a term, condition, or privilege or employment, as required to support a hostile work environment claim under Title VII, it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[95]  Further, "[i]n determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or

---

[93] *Brew v. Weyerhaeuser NR Co*., 537 F.App'x. 309, 313 (5th Cir. 2013)(internal citations omitted).
[94] 286 F.3d 264, 268 (5th Cir. 2002)(internal citations omitted).
[95] *Id.*
46260

a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"[96]

Plaintiff has alleged that she heard Dr. Shields, the Medical Director of the Hospital, ("Shields") "refer to an obese black patient by saying, 'I didn't go to school to be a veterinarian[,]'"[97] and refer[red] to a black child as "Let's get this little MFer out of here."[98] However, Plaintiff admitted in her deposition that the only statement which she actually heard was the veterinarian comment.[99] Plaintiff believes that Chastant allegedly told Jones "that she needed to be in housekeeping because she could relate," but Plaintiff admitted that she did not directly hear this alleged statement either.[100] Further, as set forth above, the Court has found that there is no summary judgment evidence supporting Plaintiff's claim that Chastant told Pickett that she needed to "know her place," or that hiring decisions were made with the objective of replacing white employees with white employees.[101] In short, there is no competent summary judgment evidence that Plaintiff was subjected to or actually overheard racially disparaging comments firsthand. Plaintiff argues that, "under the law, it is the totality of the circumstances, not any single event, which gives rise to liability for racial harassment;"[102] however, Plaintiff cites no jurisprudence in support of this assertion.

Regarding the veterinarian comment made by Dr. Shields,[103] Plaintiff's deposition testimony makes clear that Dr. Shields disparaging comment was not due to the patient's

---

[96] *Id.*
[97] Rec. Doc. 45, p. 4, Rec. Doc. 37-3, p. 88.
[98] Rec. Doc. 37-3, p. 89, ll. 1-4.
[99] *Id.*, p. 88, ll. 1-6, 22-23.
[100] *Id.* at p. 89, ll. 11-14, 21, 22-25.
[101] *See supra* nn. 45-51.
[102] Rec. Doc. 45, p. 26.
[103] Rec. Doc. 37-3, p. 88, ll. 1-6, 16-25.
46260

race, but because the patient was obese; "When [Dr. Shields] came out, walked in the nurses' station, he was like 'I didn't go to school to be a veterinarian.' I was like 'Courtney, what happened?' And she was like, 'The patient was overweight.'"[104]    The Plaintiff attributes Dr. Shield's comment to the patient's obesity not the patient's race. Assuming *arguendo* that Shield's one-time comment was racially discriminatory, a one-time, aberrant comment is not summary judgment evidence of conduct that was "so severe or pervasive that it created a work environment abusive [to her]."[105]

With regard to the comments allegedly made by Ford and Ritchie, both supervising nurses, Pickett testified that Ford told her that "she needed to know her place"[106] and "[she should be] happy [she] has a job."[107] Pickett presents no summary judgment evidence that these comments were racially motivated.  Pickett alleges that Ritchie refused to treat an African-American patient with decubitus.[108]   Pickett's deposition testimony indicates her belief that Ritchie's reluctance to treat the patient with decubitus was "because she was incompetent."[109]  Plaintiff testified that she believed it was Ritchie's alleged incompetence which lead her to feel "uncomfortable" and reluctance to treat both African-American and white patients.[110]  There is no record evidence that Ritchie refused to treat the African-American patient because of his race or that she ever called an African-American patient a derogatory name.  Plaintiff has failed to satisfy the second prong of her *prima facie* case for hostile work environment because she has not provided

---

[104] *Id.* at 16-23.
[105] *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22, 114 S.Ct. 367, 371 (1993).
[106] Rec. Doc. 37-3, p. 89, ll. 11-17.
[107] *Id.* at p. 95, ll. 6-11.
[108] Rec. Doc. 37-3, p. 90. Decubitus ulcers are more commonly known as bedsores.  *See Stewart v. Murphy*, 174 F.3d 530, 536 (5th Cir. 1999).
[109] *Id.* at p. 91, ll. 3-4.
[110] *Id.* at ll. 13-24.

46260

summary judgment evidence that Ritchie or Ford's actions were racially motivated. Accordingly, Defendants' motion for summary judgment on this claim is GRANTED.

### 4.  Retaliation

The Defendants argue that Plaintiff has not provided summary judgment evidence of her unlawful retaliation claim.  To meet her *prima facie* burden, Pickett must show that: "(1) [s]he participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action."[111]  Pickett satisfied the first prong of her *prima facie* burden when she filed her EEOC intake questionnaire on September 17, 2014,[112] because the intake questionnaire serves as the initial step in a Title VII investigation from the EEOC.[113]  Pickett's termination on December 26, 2014[114] clearly qualifies as an adverse employment action because it "affect[ed] the terms and conditions of [her] employment."[115]  Pickett argues that she meets the third *prima facie* element because "there is a temporal proximity between all of Pickett's protected activity and all of Defendants' adverse actions."[116]

Pickett relies on the Fifth Circuit's decision in *Shackelford v. Deloitte & Touche, LLP.*[117] in support of her temporal proximity argument.  According to Plaintiff, as long as there is a Title VII protected activity and an adverse employment action taken within four

---

[111] *Stewart v. BrownGreer, P.L.C.*, 655 F.App'x. 1029, 1031 (5th Cir. 2016).
[112] Rec. Doc. 20-1, pp. 3-6.
[113] "Title VII's anti-retaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation proceeding, or hearing.'" *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59, 126 S.Ct. 2405, 2410 (2006).
[114] Rec. Doc. 45, p. 13.
[115] *Burlington*, 548 U.S. at 64.
[116] Rec. Doc. 45, p. 29.
[117] 190 F.3d at 401 (5th Cir. 1999).
46260

months, "a causal connection can be established."[118]   However, Pickett's argument is contrary to the Fifth Circuit's more recent Title VII retaliation decision in *Strong v. University Health Care LLC.* where the court held:  "We affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation.  Such a rule would unnecessarily tie the hands of employers."[119]   Like the plaintiff in *Strong,*[120] Pickett presented no summary judgment evidence that she was terminated because of her EEOC complaint.  Yet, unlike the plaintiff in *Strong*, Pickett argues that Defendants' stated reason for her termination, violation of HIPAA and EMTALA, is untrue.  Given that Pickett asserts both a temporal proximity argument and evidence that the Defendants' proffered reason for termination could be pretext for discrimination, the Court finds that Pickett has satisfied the third element of her *prima facie* burden for her retaliation claim. Under *McDonnell-Douglas* burden shifting, the Defendants must demonstrate that they had a legitimate, non-retaliatory purpose for terminating her employment.[121]   Chastant stated that Pickett was terminated for violating HIPAA laws.[122]   Because the Defendants have proffered a legitimate, non-retaliatory purpose for terminating her employment, the burden shifts back to Pickett to offer evidence that the Defendants' proffered reason is merely pretext for retaliation.[123]

As evidence of pretext, Pickett submits that two white employees, who were also investigated for HIPAA violations, were not terminated – a fact which Chastant admitted

---

[118] Rec. Doc. 45, p. 32, n. 167.
[119] *Strong v. University Healthcare System, L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).
[120] *Id.* at 808-09.
[121] *Id.* at 805.
[122] Rec. Doc. 37-4, p. 70.
[123] *Strong*, 482 F.3d at 808.
46260

in his deposition.[124]    Because Pickett has provided summary judgment evidence that white employees who violated HIPAA not terminated, the Court finds that Pickett has satisfied her burden of demonstrating a material issue of fact whether the Defendants' proffered reason for her termination is a pretext for discrimination.    Accordingly, the Defendants' motion for summary judgment on Plaintiff's retaliation claim is hereby DENIED.

### C. Discriminatory Discipline and Termination

Pickett alleges that Defendants violated her Title VII rights when she was suspended without pay due to an alleged patient privacy violation, HIPPA, a work-rule violation.[125]    Per the Fifth Circuit's decision in *Turner v. Kansas City Southern Railroad Co.*,[126] "in work-rule violations cases [] a Title VII plaintiff may establish a prima facie case by showing either (1) that he did not violate the rule, or (2) that, if he did, white employees who engaged in similar acts were not punished similarly."[127]    Pickett contends that she did not commit the alleged patient privacy violations, which formed the alleged HIPAA violation, and offers the finding of the Louisiana Nursing Board's investigation as evidence of such.[128]    Plaintiff also provides the deposition testimony of Judy Jones, her supervisor, that Pickett accessed the patient records, the activity which forms the bases of the HIPPA violation, because Jones instructed her to do so in order to perform quality assurance.[129]    Accordingly, there is summary judgment evidence of Pickett did not commit the work-rule

---

[124] Rec. Doc. 37-4, p. 71.
[125] Rec. Doc. 45, p. 24.
[126] 675 F.3d 887, 892-93 (5th Cir. 2012).
[127] *Id.* (internal quotations omitted).
[128] Rec. Doc. 42-2, pp. 106-11.
[129] Rec. Doc. 37-6, p. 7, ll. 20-23, Rec. Doc. 42-5, p. 99, ll. 9-19.
46260

violation at issue in this case.

Under *McDonnell-Douglass* burden shifting, the Defendants must provide a legitimate, non-discriminatory reason for Plaintiff's suspension without pay for the alleged patient privacy violation. The Defendants argue that she was suspended without pay "because she refused to cooperate in the investigation and the uncontroverted evidence established that patient records were accessed using Pickett's credentials, WFPH concluded that a HIPAA [*sic*] breached had occurred by Pickett."[130] Pickett counters that the Hospital's investigation into the alleged HIPAA violations occurred "without her input" because she "refused to participate in the investigation by the requested date."[131] Plaintiff argues that she was denied the opportunity to "rebut" the accusations against her.[132] Because Plaintiff has provided summary judgment evidence that she did not commit the alleged violation, and such evidence could have been presented during the Hospital's investigation, Pickett has provided summary judgment evidence that Defendants' proffered reason is not legitimate.[133] Accordingly, Defendants' motion for summary judgment on Plaintiff's discriminatory discipline is DENIED.

Pickett also argues that Defendants discriminated when she was terminated for the alleged patient privacy violations. In a disparate termination case, Pickett must demonstrate that "(1) she is a member of a protected class; (2) that she was qualified for the position at issue; (3) that she was the subject of an adverse employment action; and (4) that she was treated less favorably because of her membership in that protected class

---

[130] Rec. Doc. 37-1, p. 19.
[131] *Id.* at p. 6.
[132] Rec. Doc. 45, p. 12.
[133] Rec. Doc. 37-6, p. 7, ll. 20-23, Rec. Doc. 42-5, p. 99, ll. 9-19.
46260

than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances."[134]

Defendants argue that Plaintiff cannot meet the fourth element, "that similarly situated employees outside of her protected group were treated more favorably under nearly identical circumstances."[135] Plaintiff argues that a white employee, Stilwell, was given the opportunity to resign as opposed to being fired as a result of the alleged HIPAA violations.[136] Stilwell, was a white employee with the Hospital who was also investigated for alleged HIPAA violations.[137] Given that Defendants offer no argument in opposition to Plaintiff's assertion that Stilwell was a similarly situated employee, Plaintiff has provided summary judgment evidence of her *prima facie* burden for discriminatory termination.

Defendants' non-discriminatory reason for allowing Stilwell to resign, and not affording the same opportunity to Plaintiff, is that Pickett "never requested to be allowed to resign."[138] Defendants proffer no evidence that Stilwell requested the opportunity to resign or that her request was the basis for Defendants decision to allow her to resign as opposed to terminating her employment. Given that Defendants provide no summary judgment evidence in support of their non-discriminatory reason for terminating Pickett instead of allowing her to resign, the Defendants' motion for summary judgment is DENIED.

### D. Louisiana State Law Claims

The Defendants argue that Plaintiff's state law LEDL claims should be analyzed

---

[134] *Moore v. University of Mississippi Medical Center*, 719 Fed.Appx. 381, 385 (5th Cir. 2018).
[135] Rec. Doc. 37-1, p. 21.
[136] Rec. Doc. 37-4, p. 73, ll. 9-17.
[137] *Id.* at p. 70, ll. 4-15, p. 71, ll. 7-8.
[138] Rec. Doc. 48, p. 5.
46260

under the federal Title VII framework. Plaintiff offers no argument to the contrary. The Louisiana Fourth Circuit in *Plummer v. Marriott Corporation* noted that, "because the Louisiana statute is similar in scope to the federal anti-discrimination prohibitions in Title VII of the Civil Rights Act of 1964, Louisiana court have routinely looked to the federal jurisprudence for guidance in determining whether a claim has been asserted."[139] The Fifth Circuit recognized this practice in *Smith v. AT&T Solutions, Inc.* stating, "Louisiana courts have often looked to federal anti-discrimination jurisprudence in interpreting Louisiana's anti-discrimination statutes."[140] Given that both Louisiana appellate courts and the Fifth Circuit have all recognized that the federal Title VII framework may be used to analyze a Louisiana state law claim of discrimination and retaliation, the Court's Title VII reasoning and analysis set forth above applied equally to Plaintiff's state law claims of discrimination and retaliation.

Accordingly, the Defendants' motion for summary judgment on Plaintiff's state law discrimination claims for failure to promote to the compliance officer, infection control coordinator, and employee health nurse positions is granted, and denied as to the utilization review position. Defendants' motion for summary judgment on Plaintiff's state law disparate pay and retaliation claims are denied. Defendants' motion for summary judgment on Plaintiff's state law hostile work environment claim is granted.

---

[139] 94-2025, pp. 6-7 (La.App. 4 Cir. 4/26/95), 654 So.2d 843, 848.
[140] 90 F'.Appx. 718, 723 (5th Cir. 2004).
46260

## III. CONCLUSION

For the reasons stated above, the Defendants' *Motion for Summary Judgment* on Plaintiff's failure to promote for the compliance officer, infection control coordinator, and employee health nurse position is GRANTED.[141]   Defendants' *Motion for Summary Judgment* on Plaintiff's failure to promote for the utilization review position is DENIED. Defendants' *Motion for Summary Judgment* on Plaintiff's disparate pay claim is GRANTED.   Defendants' *Motion for Summary Judgment* on Plaintiff's hostile work environment claim is GRANTED, Defendants' *Motion for Summary Judgment* on Plaintiff's retaliation claim is DENIED, and Defendants' *Motion for Summary Judgment* on Plaintiff's disparate discipline and termination claims are DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>June 15, 2018</u>.


_____

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[141] Rec. Doc. 37.

46260